Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK DE GUZMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCIPLAY CORPORATION AND SCIPLAY GAMES, LLC.,<br><br>Defendants. | Case No. ______________<br><br>**CLASS ACTION COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

This is a putative class action lawsuit against Defendants for engaging in an illegal gambling scheme, Plaintiff Mark De Guzman, individually and on behalf of all others similarly situated, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## INTRODUCTION

1. Defendants SciPlay Corporation and SciPlay Games, LLC own, operate, and receive significant revenue from their online "social" casino available on various mobile apps, where they offers casino-style slots games that operate based on a digital currency called "coins" which can be purchased and wagered for extended gameplay along with other upgrades and rewards (the "SciPlay Gambling Platform").[1]

2. While Defendants advertise and promote the SciPlay Gambling Platform to people in California as a legitimate online business, giving it an aura of legitimacy and legality to Plaintiff and Class members, the SciPlay Gambling Platform is actually a dangerous and plainly unlawful gambling enterprise.

3. The scheme goes like this: Defendants sell digital coins to consumers on the SciPlay Gambling Platform – including consumers in California – and then immediately accepts those coins back (from the consumers who purchased them) as wagers on the outcomes of the various casino-style games of chance offered on the SciPlay Gambling Platform. Consumers who purchase and then wager virtual coins on the SciPlay Gambling Platform do so in the hopes of winning more of these coins, which can be used to place more wagers and, in some instances, unlock new gambling games or extend their gameplay once they have run out of coins to wager with. Plaintiff and numerous other California residents have lost significant sums of their hard-earned money buying

---

[1] The Sciplay Gambling Platform is comprised of the following applications: 88 Fortunes Slots; Bingo Showdown; Blazing 7s Casino; Dancing Drums Slots Casino; Gold Fish Casino Slot Games; Hot Shot Casino Slot Games; Jackpot Party Casino Slots; MONOPOLY Slots; and Quick Hit Slots

and placing wagers with coins on the SciPlay Gambling Platform, and Defendants have, in turn, reaped enormous profits from the losses these people have sustained.

4. California's gambling law clearly prohibits the type of gambling offered by Defendants. Accordingly, Plaintiff brings this Class Action Complaint, individually and on behalf of all others similarly situated, to redress Defendants' widespread violations of California's gambling laws.

**PARTIES**

5. Plaintiff Mark De Guzman is a natural person and a citizen and resident of San Jose California.

6. Defendant SciPlay Corporation is a private company organized and existing under the laws of Delaware, with a place of business in Las Vegas, Nevada. Defendant SciPlay Corporation has operated and continues to operate the SciPlay Gambling Platform and has received and continues to receive substantial revenue from the losses sustained by players who have purchased and wagered with virtual coins on the SciPlay Gambling Platform, including California residents.

7. Defendant SciPlay Games, LLC is a private company organized and existing under the laws of Delaware, with a place of business in Las Vegas, Nevada. Defendant SciPlay Games, LLC has operated and continues to operate the SciPlay Gambling Platform and has received and continues to receive substantial revenue from the losses sustained by players who have purchased and wagered with virtual coins on the SciPlay Gambling Platform, including California residents.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

9. The Court has personal jurisdiction over Defendants and venue is proper in this judicial District because Defendants purposefully directed the SciPlay Gambling Platform to residents of California (including by advertising and running promotional materials directed to persons in California), knowingly accepted registrations, purchases of coins, and wagers placed with

purchased coins on the SciPlay Gambling Platform from Plaintiff and numerous other persons in California, and collected enormous revenues from the losses suffered by Plaintiff and numerous other persons in California who purchased and placed wagers with such coins on the SciPlay Gambling Platform, such that a substantial portion of the events that gave rise to Plaintiff's claims occurred in California and within this judicial District.

## FACTUAL ALLEGATIONS

### I. California's Gambling Laws

10. California Penal Code § 330b(a) states that it is "unlawful for any person to make or to permit the making of an agreement with another person regarding any slot machine or device, by which the user of the slot machine or device, as a result of the element of hazard or chance or other unpredictable outcome, may become entitled to receive money, credit, allowance, or other thing of value or additional chance or right to use the slot machine or device, or to receive any check, slug, token, or memorandum entitling the holder to receive money, credit, allowance, or other thing of value."

11. California Penal Code 330b(d) provides: "For purposes of this section, 'slot machine or device' means a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device[.]"

12. California broadly defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Penal Code, § 330.2.

13. As alleged below, during the relevant statutory period, Defendants violated California's ban on gambling operating and amassing enormous revenue from the losses sustained by California residents on the illicit "slot machine or device" offered on its SciPlay Gambling Platform.

## II. The Evils of Online Gambling

14. Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlike historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical, financial, and interpersonal problems.

15. Against this backdrop, many states, including California, have been steadfast in maintaining and enforcing their gambling laws, even in the event that federal law takes a more permissive approach. For over 150 years California has broadly prohibited gambling. For example, in 1872, California enacted Penal Code Section 330, which provides in relevant part that:

> "[e]very person who . . . conducts, either as owner or employee . . . *any banking or percentage game* played with . . . any device, for money, checks, credit, or other representative of value . . . is guilty of a misdemeanor." Cal. Penal Code § 330 (emphasis added).

16. A "banking game" refers to a situation where the "house" is a participant in the game, taking on all contestants, paying all winners, and collecting from all losers. *See Sullivan v. Fox*, 189 Cal. App. 3d 673, 678 (1987). And a "percentage game" refers to a situation where the house collects a portion of the bets or wagers made by contestants but is not directly involved in game play. *See id.* at 679.

17. In fact, as the California legislature re-affirmed in 2008, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

18. With technological advances, however, many casinos and other gambling operators proliferated into people's pockets through online websites and apps, including the SciPlay Gambling

Platform. These online gambling platforms have been particularly challenging to regulate because many states' anti-gambling statutes were originally enacted to prohibit in-person gambling activities.

19. Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As the Defendants' own CEO explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[2]

20. Defendants have employed these exact tactics to maximize the profits they reap through the SciPlay Gambling Platform.

### III. The SciPlay Gambling Platform

21. Defendants own and operate the SciPlay Gambling Platform, which is on various mobile apps. The SciPlay Gambling Platform allows consumers, including those in California, to spend real money to purchase coins and to gamble with those coins on a wide variety of chance-based games, including slots.

22. The process of getting set up with an account to play the gambling games offered on the SciPlay Gambling Platform simply requires a consumer to input basic personal information, including, inter alia, his or her e-mail address and phone number.

---

[2] Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now, VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

23. After creating an account, the consumer can begin placing wagers on the gambling games offered on the SciPlay Gambling Platform with a small periodic allotment of free coins provided upon enrollment.

24. After invariably losing the free allotments of coins, the consumer must purchase more coins if he or she wishes to continue wagering with them on the particular casino game of their liking within the SciPlay Gambling Platform.

25. Thus, after the consumer loses the free allotments of coins, Defendants will aggressively attempt, through persistent pop-up screens and pages, to sell the consumer additional coins – at varying prices depending on the number of coins the consumer wishes to purchase.

26. Purchases of additional coins on the SciPlay Gambling Platform can be made using a wide variety of payment methods, including credit and debit cards. Regardless of the payment method, the purchased coins are instantly available for gambling on the SciPlay Gambling Platform.

27. The coins won by consumers playing Defendants' games of chance are identical to the coins that Defendants sell.

28. Freshly topped off with an additional allotment of purchased coins, the consumer will wager those coins in the hopes of winning more coins that he or she would otherwise have had to purchase.

29. Notably, the outcome of every wager placed on each of the games offered on the SciPlay Gambling Platform is based on an element of chance.

30. Defendants maintain win and loss records and account balances for each person who creates an account, purchases coins, and uses those coins to place wagers on the SciPlay Gambling Platform. Indeed, once Defendants' algorithms determine the outcome of a wager and Defendants display the outcome, Defendants adjust the balance of coins in the person's account. Defendants keep detailed records of each wager and its outcome for every player of every game offered on the SciPlay Gambling Platform.

31. Using the information provided by users at the time they register for accounts and make purchase of coins, as well as by analyzing users' IP addresses, Defendants have intimate knowledge of, and maintains records reflecting, the geographic locations (including city and state

for U.S.-based players) from which each of its users enrolled in, made purchase of coins, and lost coins wagering on the SciPlay Gambling Platform.

32. Thus, at the time Plaintiff and the other members of the Class enrolled in, purchased coins on, and lost coins placing wagers on the SciPlay Gambling Platform, Defendants had actual knowledge that these persons were located in California based on the information they had provided while registering for accounts and making purchases and the IP addresses associated with the devices from which they accessed the SciPlay Gambling Platform. Defendants nonetheless happily pocketed the losses they sustained using purchased coins to place wagers on the SciPlay Gambling Platform.

33. During the four-year period preceding the filing of this action, Defendants have received significant revenue from California residents through their operation of “fringe gambling devices,” “video gaming devices,” and “gambling devices or records” on the illicit SciPlay Gambling Platform – in direct violation of California’s Gambling Act.

**IV. Plaintiff Mark De Guzman’s Experience**

34. Plaintiff Mark De Guzman created an account on the SciPlay Gambling Platform and, after losing his periodic allotments of free coins by placing wagers on the SciPlay Gambling Platform, he purchased additional coins from Defendants.

35. Thereafter, Plaintiff continued to play the gambling games offered on the SciPlay Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

36. During the four-year period preceding the filing of this action, Plaintiff spent a significant amount of money purchasing coins from Defendants and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the SciPlay Gambling Platform.

37. At all times relevant hereto, Plaintiff resided in, was a citizen of, and was physically present in California.

**V. Plaintiff's Claims Are Not Subject to Arbitration.**

38. Plaintiff's sole reason for setting up an account with Defendants was to gain access to the SciPlay Gambling Platform services in California offered by Defendants that he now understands violate California law. He did not review and was not aware he was purportedly agreeing to any terms and conditions on Defendants' SciPlay Gambling Platform at the time of account creation or otherwise.

39. Said differently, to the extent a contract was formed between Plaintiff and Defendants, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

40. Accordingly, Plaintiff's contract with Defendants (to the extent any such contract was otherwise ever formed) is void (and was void *ab initio*) pursuant to, among other authorities California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

## CLASS ACTION ALLEGATIONS

41. Plaintiff seeks to represent a class defined as all residents of California who purchased, wagered, and lost coins on Defendants' SciPlay Gambling Platform at any time during the four-year period preceding the filing of this action (continuing through the date of any order granting class certification).

42. Members of the Class are so numerous that their individual joinder herein is impracticable. The members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time, but will be determined in discovery. The Class may be notified of the pendency of this action at the addresses found in Defendants' records.

43. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendants maintained, owned, operated, or managed gambling websites prohibited by California Penal Code §§ 330a, 330b, and 330.1 *et seq.*; (b)

whether Defendants violated 18 U.S.C. § 1955 by operating the gambling businesses described herein; (c) whether Defendants' conduct alleged herein violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (d) whether Defendants' conduct alleged herein constitutes conversion and/or unjust enrichment; (e) whether Plaintiff and the Class members are entitled to damages and/or restitution; (f) whether Defendants should be enjoined from further engaging in the misconduct alleged herein; and (g) whether Plaintiff and the Class members are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

44. The claim of the named Plaintiff is typical of the claims of the members of the Class in that the named Plaintiff and all Class members suffered monetary loss as a result of Defendants' SciPlay Gambling Platform.

45. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

46. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, *et seq.* (On Behalf of Plaintiff and the Class)

47. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

49. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

50. As alleged in detail above, and incorporated herein by reference, Defendants' deceptive enrollment process and false sales of the Cold Plasma Subscriptions violate the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the CLRA, Cal. Civ. Code § 1770, *et seq.*; and the following gambling laws:

(a) **California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800, *et seq.*)**: Sections 19801 and 19850 of the Gambling Control Act provide that unless licensed, state law prohibits commercially operated gambling facilities; that no new gambling establishment may be opened except upon affirmative vote of the electors; that all gambling operations and persons having significant involvement therein shall be licensed, registered, and regulated; and that all persons who deal, operate, carry on, conduct, maintain or expose for play any gambling game shall apply for and obtain a valid state gambling license. The SciPlay Gambling Platform constitutes "gambling" because it is a game of "chance, including any gambling device…played for currency, check, credit, or any other thing of value that is not prohibited and made unlawful by

statute or local ordinance." Cal. Penal Code § 337j(1). Defendants have not applied for or obtained any state gambling license, and therefore violates California's Gambling Control Act.

(b) **California Penal Code § 330a:** Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is guilty of a misdemeanor." Defendants violate this law because they operate the illegal SciPlay Gambling Platform gambling operation upon which persons are able to, and do, gamble in virtual games of chance.

(c) **California Penal Code § 330b:** Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this section." Defendants violate this law because they permit the operation, placement, maintenance, or keeping of a slot machine or device as defined by Penal Code § 330b(d). The software for the SciPlay Gambling Platform is an apparatus alone. Moreover, the game operating together with Defendants' servers are a machine, apparatus or device. The software for

the game also modifies mobile phone devices into gambling devices as defined by Penal Code § 330b(d). Further, a user's mobile device is adapted by the game to create a slot machine or device. Users play the game and purchase "coins" from the games through hardware features of the mobile devices on which the SciPlay Gambling Platform operates.

(d) **California Penal Code § 330.1 *et seq.***: Section 330.1(a) states that "[e]very person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used, or kept in any room, space, or building owned, leased, or occupied by him or her or under his or her management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use that slot machine or device, or to receive any check, slug, token, or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor." Defendants violate this law because they operate the illegal SciPlay Gambling Platform gambling operation upon which persons are able to, and do, gamble in virtual games of chance.

(e) **California Penal Code § 337j(a)(1)**: By "operat[ing], carry[ing] on, conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state. Defendants violate this law because they operate the illegal SciPlay Gambling Platform gambling operation upon which persons are able to, and do, gamble in virtual games of chance.

(f) **California Penal Code § 337j(a)(2):** By "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game." Defendants violate this law because they operate

the illegal SciPlay Gambling Platform gambling operation upon which persons are able to, and do, gamble in virtual games of chance.

(g) **Cal. Penal Code § 319.** Section 319 defines a lottery as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Defendants violate this law because they operate the illegal SciPlay Gambling Platform gambling operation upon which persons distribute their property (*i.e.*, "coins") which they purchased through valuable consideration based on chance.

(h) **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA"):** The IGBA makes it a crime to "conduct, finance, manage, supervise, direct, or own all or part" of an illegal gambling business. Defendants violate the IGBA because its business involves five or more persons, has been in continuous operation for more than thirty days, and violates California's gambling laws as alleged herein. By managing, directing, or controlling all or part of the conduct alleged herein with respect to its sale of virtual currency (in the form of coins) Defendants violate 18 U.S.C. § 1955.

(i) **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367) (the "UIGEA"):** The UIGEA makes it illegal for a "person engaged in the business of betting or wagering" to knowingly accept payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5633. "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager through, at least in part, the Internet where such bet or wager "is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 15 U.S.C. § 5362(10)(a). Defendants violate this law because they operate the illegal SciPlay Gambling Platform gambling operation upon which persons are able to, and do, gamble in virtual games of chance.

51. Each of these acts and practices constitutes an unlawful act, and thus an independent violation of the UCL.

52. Defendants have also violated the UCL's proscription against engaging **<u>in Unfair Business Practices.</u>** Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

53. There is no public utility to Defendants' illegal SciPlay Gambling Platform. The gravity of the consequences of Defendants' conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for gaming apps in the marketplace. Defendants' illegal gambling practices only injure healthy competition and harm consumers.

54. Plaintiff and the Class could not have reasonably avoided this injury.

55. Defendants have also violated the UCL's proscription against engaging **<u>in Deceptive Business Practices.</u>** As alleged in detail above, Defendants committed deceptive acts by inducing Plaintiff and the Class members to wager money on the illegal SciPlay Gambling Platform.

56. Specifically, Defendants committed deceptive acts by including misleading language and omitting material facts about the true nature of the SciPlay Gambling Platform. These representations were false and misleading.

57. Defendants' representations were misleading to Plaintiff and other reasonable consumers.

58. As a direct and proximate cause of Defendants' deceptive and unfair trade practices, Plaintiff and other members of Class suffered an injury in fact and/or lost money and property as described above.

59. Through their unlawful, unfair, and deceptive acts and practices, Defendants improperly obtained money from Plaintiff and members of the Class. As such, Plaintiff requests that this Court to order Defendants to restore this money to Plaintiff and the members of the Class, and to enjoin them from continuing to violate the UCL. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not

granted. Accordingly, Plaintiff and the Class lack an adequate remedy at law. Moreover, Plaintiff asserts this cause of action in the alternative to its claims for damages below. Finally, legal remedies available to Plaintiff and Class are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiff and the Class fail to sufficiently adduce evidence to support an award of damages. Further, damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Equitable relief is appropriate because Plaintiff and the Class may lack an adequate remedy at law if, for instance, damages resulting from their use of the SciPlay Gambling Platform is determined to be an amount less than paid to purchase coins. Without compensation for the full amount paid, Plaintiff and the Class would be left without the remedy they are entitled to in equity.

60. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendants from continuing to engage in the conduct described above as Defendants' wrongful conduct is ongoing.

61. Plaintiff also seeks rescission and an order requiring Defendants to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203. 125. Additionally, Plaintiff and the Class members seek an order requiring Defendants to pay their attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**COUNT II**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 17500, *et seq.***
**(On behalf of Plaintiff and the Class)**

62. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

64. In light of the CLRA's underlying purpose to protect consumers and the liberal construction with which courts should interpret it, Plaintiff's purchase of Defendants' "coins" in the forms of as described above falls within the definition of a "goods or service" within the meaning of Cal. Civ. Code. § 1761 and 1770.

65. Plaintiff and each member of the Class are consumers as defined by Cal. Civ. Code. § 1761(d).

66. Defendants' sale of "coins" to consumers were "transactions" within the meaning of Cal. Civ. Code. § 1761(e). The purchase of "coins" is a transaction for accessing and using the SciPlay Gambling Platform.

67. Defendants violated, and continues to violate, the CLRA by, *inter alia*: (a) manipulating the odds of the games of chance in the SciPlay Gambling Platform to increase their addictive qualities and to induce players to continue playing and spending more money; and (b) deceiving or confusing customers into believing that the gambling transactions made through the SciPlay Gambling Platform confer or involve certain rights, remedies, or obligations (*i.e.*, the right to recover winning and the obligation to pay for losses), when in fact any such rights, remedies or obligations are prohibited by law.

68. Defendants also violated the following provisions of Cal. Civ. Code § 1770 (a) "Representing that goods or services have . . . characteristics . . . that they do not have"; (b) "Using deceptive representations . . . in connection with . . . services"; and (c) "Advertising goods or services with intent not to sell them as advertised."

69. Defendants' conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future. Plaintiff and the Class relied on Defendants' advertisements, representations and/or omissions to purchase "coins" on the SciPlay Gambling Platform.

70. As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class members have suffered and will continue to suffer actual damages.

71. Defendants' wrongful conduct is ongoing and presents a continuing threat to the Class members.

72. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel has notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend the Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendants. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

**COUNT III**
**Violation of Penal Code section 496(c)**
**(On behalf of Plaintiff and the Class)**

73. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

75. As alleged above, Defendants' advertisements induced Plaintiff to wager significant amounts of money on the false pretense that it was legal in California. Its purpose in making these false pretenses was to illegally take money from Plaintiff and the Class members.

76. Pursuant to California Penal Code section 496(a) receiving property "that has been obtained in any manner constituting theft" is a criminal offense punishable by imprisonment. Pursuant to California law, procuring funds by false pretenses constitutes a violation of Section 496(a). Pursuant to Section 496(c), any person that violates Section 496(a) is liable for three times the actual damages as well as attorney's fees.

77. Defendants' conduct alleged above constitutes a violation of Penal Code section 496(a) entitling Plaintiff to the relief provided by Section 496(c) including treble damages and reasonable attorney's fees.

**COUNT IV**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

78. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants under the laws of California.

80. Plaintiff and the Class members have conferred a benefit upon Defendants in the form of the money they paid for the purchase "coins" to wager on Defendants' illegal SciPlay Gambling Platform.

81. Defendants appreciate and have knowledge of the benefits conferred upon them by Plaintiffs and the Class.

82. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiffs and the Class members, which Defendants have unjustly obtained as a result of their unlawful operation of casino games. As it stands, Defendants have retained millions of dollars in profits generated from their unlawful games of chance and should not be permitted to retain those ill-gotten profits.

83. Accordingly, Plaintiffs and the Class members seek full disgorgement of all money Defendants have retained as a result of the wrongful conduct alleged herein

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the Classes and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order declaring Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For recission, restitution and all other forms of equitable relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: January 13, 2026

Respectfully submitted,

By: */s/ Adrian Gucovschi*

Adrian Gucovschi (SBN 360988)
**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (SBN 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

**-and-**

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.

I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff Mark De Guzman in this action. Plaintiff alleges that he is a citizen of California who resides in San Jose, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendants regularly does business in the Northern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures as alleged herein, have occurred in this judicial District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on January 13, 2026.

*/s/ Adrian Gucovschi*
Adrian Gucovschi