Elizabeth Pipkin (243611)
Juan Luna-Bojalil (346626)
Hannah Lauchner (365952)
MCMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:    epipkin@mcmanislaw.com;
          jluna@mcmanislaw.com;
          hlauchner@mcmanislaw.com

Daniel C. Taylor (*Pro Hac Vice*)
Eric F. Dement (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone:    (303) 592-3100
Facsimile:    (303) 592-3140
Email:     daniel.taylor@bartlitbeck.com;
           eric.dement@barlitbeck.com

*Attorneys for Defendants,*
SciPlay Corporation and
SciPlay Games, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK DE GUZMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCIPLAY CORPORATION AND SCIPLAY GAMES, LLC,<br><br>Defendants. | Case No.: 5:26-CV-00344-EKL<br><br>**DEFENDANTS SCIPLAY CORPORATION AND SCIPLAY GAMES, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**<br><br>Date:    July 15, 2026<br>Time:    10:00 a.m.<br>Dept:    Courtroom 7—4th Floor<br>Judge:    Hon. Eumi K. Lee |

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on July 15, 2026, at 10:00 a.m., or as soon as available, in the courtroom of the Honorable Eumi K. Lee, located at Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendants SciPlay Corporation and SciPlay Games, LLC (collectively, "SciPlay") will and hereby do move the Court for an order compelling Plaintiff Mark De Guzman to arbitrate his claims on an individual basis and staying his claims pending resolution of the arbitration.

SciPlay moves under the Federal Arbitration Act, 9 U.S.C. §§ 3–4, for an order compelling arbitration and staying De Guzman's claims pending resolution of the arbitration because De Guzman agreed to arbitrate his claims. This Motion is based on this Notice of Motion, SciPlay's Memorandum of Points and Authorities, the concurrently filed Declaration of Cameron Lee and any exhibits attached thereto; any Reply which SciPlay may file in support of this Motion, and any evidence and argument presented to the Court. Per Standing Order VIII.A, the parties met and conferred about this Motion by videoconference on March 13, 2026, and SciPlay disclosed the bases for this Motion in that conference.

DATED: March 23, 2026

BARTLIT BECK LLP

 /s/ Daniel C. Taylor
Daniel C. Taylor
Eric F. Dement

*Attorneys for Defendants*,
SciPlay Corporation and
SciPlay Games, LLC

i

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Mark De Guzman agreed to individually arbitrate all claims involving SciPlay's free-to-play video games. Despite agreeing to individual arbitration, he now brings various state-law claims here on behalf of a putative class alleging that SciPlay's games are unlawful gambling.

His underlying claims lack merit. Video games that are free to play and in which nobody can ever win or lose any money are not gambling. And even if they were, the underlying law bars these types of claims. But the merits are an issue for another day and another decisionmaker: Guzman's claims belong in arbitration, not in this Court.

The Federal Arbitration Act ("FAA") embodies "a national policy favoring arbitration" and requires courts to enforce arbitration agreements "according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011) (cleaned up). The FAA's liberal pro-arbitration policy controls here. And it makes this a straightforward motion. After opening one of SciPlay's games, Guzman received a pop up that took up his entire screen and told him that, by tapping the "Accept!" button, he would agree to SciPlay's Terms of Service. Guzman then clicked "Accept!" to manifest his assent to those Terms of Service.

Under the Terms of Service, Guzman agreed to arbitrate all disputes regarding SciPlay's games on an individual basis, to delegate all arbitrability questions to an arbitrator, and to waive his right to bring or participate in a class action. The Court should therefore compel arbitration and stay the case so that an arbitrator may decide the dispute, as required by the parties' contract.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Under the FAA, courts must compel arbitration when the parties entered a mandatory arbitration agreement. De Guzman clicked a large "Accept!" button after receiving a pop up telling him that doing so would accept SciPlay's Terms of Service, including its mandatory arbitration provision and class-action waiver. Should the Court compel arbitration?

2. When either party applies to stay the proceedings, the FAA requires courts to do so when the parties have agreed to arbitrate their claims. The parties agreed to arbitrate their claims, and SciPlay requests to stay the proceedings. Should the Court stay the proceedings?

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

**BACKGROUND**

**I.      SciPlay offers its games subject to its Terms of Service, which include a prominent arbitration clause.**

SciPlay is a social casino company that offers free-to-play casino-themed video games. Declaration of Cameron Lee ("Lee Decl.") ¶ 3.[1] These games are known as social casino games because players only play them for fun and can never win any money from them.

To play any SciPlay game, every user must first accept SciPlay's Terms of Service. *Id.* ¶¶ 5, 9–10. The Terms of Service govern using "the Platform," which includes all SciPlay's "games, websites, and apps." *Id.*, Ex. B ("Terms of Service"), intro. (capitalization changed). The Terms of Service warn users to read them "carefully before using this Platform" and then explain in bold font that the Terms of Service include an arbitration agreement:

> **Your agreement to these Terms includes your agreement to individually arbitrate any and all claims arising out of or in connection with these Terms or the Platform pursuant to the Federal Arbitration Act and subject to the terms below (Section 19, "Agreement to Arbitrate and Class Action Waiver").**

*Id.* The full arbitration agreement (Section 19) then has a bold heading titled "**Agreement to Arbitrate and Class Action Waiver**." *Id.* § 19.

The parties agree "to binding arbitration" under the FAA "of any and all claims (regardless of the date of accrual of such claim) arising out of or in connection with these Terms or the Platform." *Id.* § 19.1. Either party may submit a dispute to arbitration. *Id.* § 19.3. The agreement also includes a class-action waiver, which requires the parties to arbitrate "**only on an individual basis and NOT A CLASS-WIDE BASIS.**" *Id.*; *see id.* § 19.7.

The Terms of Service specify that the Judicial Arbitration and Mediation Services Inc. ("JAMS") will administer the arbitration under the JAMS Comprehensive Arbitration Rules and Procedures. *Id.* § 19.4. Those rules delegate to the arbitrator the "authority to determine jurisdiction and arbitrability issues as a preliminary matter," including any disputes about the contract "under which Arbitration is sought." Ex. 1 ("JAMS Compr. Arb. R.") § 11(b).

---

[1] "A court may consider evidence outside the pleadings when ruling on . . . a motion to compel arbitration." *Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021).

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

The Terms of Service also provide that using the Platform manifests agreement to the Terms of Service. Terms of Service, intro., §§ 3, 25. And they say that the FAA governs the interpretation and enforcement of the arbitration provision. *Id.*, intro., § 19.1.

The current version of the Terms of Service has been in effect since September 2024. Lee Decl. ¶ 4. De Guzman also accepted a substantially similar earlier version of the Terms of Service that was in effect from September 2020 to September 2024. *Id.* ¶¶ 4, 12. This earlier version also had a mandatory arbitration agreement, except it provided for individual arbitration with the American Arbitration Association ("AAA") under its rules. *See id.*, Ex. A § 19.3.

## II.    De Guzman accepted the Terms of Service

Mark De Guzman is a California resident who alleges that he "created an account" on SciPlay's Platform. Dkt. 1 ("Compl.") ¶ 34. He also claims that he has played SciPlay's games and bought virtual coins "[d]uring the four-year period preceding the filing of this action." *Id.* ¶ 33. SciPlay's records show that he has played SciPlay's games since 2013. *See* Lee Decl. ¶ 11.

De Guzman could not have accessed, or made purchases in, any game without first affirmatively accepting the Terms of Service. Since September 2020, SciPlay has required *every* player to accept its Terms of Service before they could access the games or buy virtual coins. *Id.* ¶¶ 5, 9–10. When it updated its Terms of Service in 2024, all players had to accept the updated Terms before they could access the games, let alone buy virtual coins in them. *Id.* ¶ 5. SciPlay ensured that all players gave their express agreement by having pop-up banners display before (1) new players can begin playing its games and (2) existing players can continue playing its games. *Id.* ¶ 5. These pop ups displayed immediately when a player opened a game, and they covered the entire screen. *Id.* ¶ 6. These pop ups were nearly identical across the different games, though the background artwork and greeting differed based on the game name. *Id.* ¶ 7.

The pop ups prominently hyperlinked to the Terms of Service by bolding, underlining, and making brightly colored the words "Terms of Service." *Id.* ¶ 8; *see id.*, Ex. C. The pop ups explain that the Terms of Service "include an 'Agreement to Arbitrate and Class Action Waiver'" and that clicking "Accept!" will accept the Terms of Service. *See id.*, Ex. C. SciPlay designed the pop up so that players could not play any game—or buy any virtual coins—unless

3

they first agreed to the Terms of Service by hitting "Accept!" Lee Decl. ¶ 9. The Terms of Service also put existing players on notice that continuing to play signified agreement to any revised terms. Terms of Service § 3. The Terms of Service have been easily accessible to players, available online and hyperlinked in the games. Lee Decl. ¶ 13.

Guzman was an existing player in 2024, so when SciPlay rolled out its revised Terms of Service, he was shown a pop-up banner that looked like this:



SciPlay's records show that De Guzman accepted the 2024 Terms of Service in July 2025. *Id.* ¶ 12. In February 2021, he had accepted an earlier version of the Terms of Service, which also included an arbitration agreement. *Id.*; *see also id.*, Ex. A § 19.

## III.    De Guzman ignores the arbitration agreement and sues in this court.

Despite agreeing to the mandatory arbitration provision, De Guzman filed a putative class action in this Court seeking damages and declaratory relief on behalf of a class of California residents who spent money in SciPlay's games. He claims that the games violate "California's gambling law" even though they are free to play and nobody can ever win or lose any money. Compl. ¶ 4. SciPlay now moves to compel arbitration and stay the proceedings.

## LEGAL STANDARDS

The FAA applies to "arbitration agreements in contracts evincing 'a transaction involving

4

commerce.'" *Zoller v. GCA Advisors*, 993 F.3d 1198, 1201 (9th Cir. 2021) (quoting 9 U.S.C. § 2). The FAA shows "a liberal federal policy favoring arbitration." *Id.* (quotations omitted).

Before compelling arbitration, courts "apply state-law principles of contract formation." *Keebaugh v. Warner Bros.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (quotations omitted). Courts first ask whether the parties entered an arbitration agreement. *See id.* They then ask whether a court or an arbitrator must decide whether the dispute falls within that agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). When, as here, "the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 69. Yet even when it does not, "the court must order the parties to proceed to arbitration in accordance with the" agreement's terms. *Keebaugh*, 100 F.4th at 1013.

Courts apply the summary-judgment standard to determine "whether an arbitration agreement was formed." *Alkutkar v. Bumble, Inc.*, 2025 WL 2925296, at *1 (9th Cir. Oct. 15, 2025) (unpublished). A court may only outright deny a motion to compel arbitration if it finds that "no reasonable trier of fact could find an agreement was made." *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1044 (N.D. Cal. 2025).

## ARGUMENT

When a valid arbitration agreement exists, a court must order the parties to proceed to arbitration. De Guzman agreed to the Terms of Service by clicking "Accept!" after being notified that doing so would count as agreeing to them. Lee Decl. ¶¶ 8, 12. In doing so, De Guzman agreed to arbitrate all disputes with SciPlay under the JAMS Rules. The JAMS Rules, in turn, delegate all arbitrability questions to the arbitrator. The FAA requires the Court to enforce this agreement and compel De Guzman to arbitrate his claims and stay this proceeding.

**I.    The Court should compel arbitration because De Guzman agreed to SciPlay's Terms of Service, which require arbitrating any claim involving SciPlay.**

**A.    De Guzman agreed to the Terms of Service by clicking "Accept!"**

De Guzman chose to click "Accept!" In doing so, he actually or constructively consented to the arbitration clause at issue. Forming a contract under California (or Nevada[2]) law requires

---

[2] The Terms of Service have a Nevada choice-of-law clause, Terms of Service § 21, so Nevada law applies, *Costless Wholesale, Inc. v. Amazon.com Servs. LLC,* 2023 WL 6224825, at *3 (C.D.

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

parties to have "actual or constructive notice" of the contract and then "manifest mutual assent" to it. *Keebaugh*, 100 F.4th at 1013–14 (quotations omitted). The same rules apply when parties form agreements over the internet. *See id.* To determine whether parties have formed a contract over the internet, courts classify internet contracts "by the way in which the user purportedly" agrees to "the associated terms." *Id.* (quotations omitted).

Courts call the kind of contract here a "clickwrap" agreement. In a clickwrap agreement, users "click on an 'I agree' box after being presented with a list of terms and conditions of use." *Id.* These terms need not be directly shown to the user in the same screen as the "I agree" button: "a link to the agreement readily available" will do. *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 939 (N.D. Cal. 2023) (quotations omitted). "Courts have routinely found clickwrap agreements enforceable." *Keebaugh*, 100 F.4th at 1014 (quotations omitted).

Here, De Guzman accepted SciPlay's Terms of Service (and accompanying arbitration agreement) through a clearly conspicuous clickwrap agreement. When he opened the game, a pop up immediately displayed, covered the entire screen, and prevented him from continuing onto the game. Lee Decl. ¶¶ 6, 9. That pop up informed him to "[p]lease take a moment to review" the Terms of Service; that the "Terms of Service include an 'Agreement to Arbitrate and Class Action Waiver'"; and that by clicking the "Accept!" button, he accepted the contract. *Id.*, Ex. C. The pop up also prominently hyperlinked to the Terms of Service in several spots by bolding, underlining, and making brightly colored "Terms of Service." *See id.*; Lee Decl. ¶ 8.

The conspicuous pop-up banner gave De Guzman notice that he was accepting the Terms of Service when he clicked "Accept!" Court after court has found that this is more than enough to form a contract under California law. *See, e.g.*, *Hunter v. Pre-Paid Legal Services, Inc.*, 2025 WL 3101978, at *3  (N.D. Cal. Nov. 6, 2025) (finding that user accepted the arbitration agreement by clicking "a 'CONTINUE' button accompanied by the statement: 'By clicking

---

Cal. Sep. 20, 2023); *see also Augustine v. TLC Resorts Vacation Club, LLC*, 2018 WL 3913923, at *4 (S.D. Cal. Aug. 16, 2018). But as the cases cited in this Motion show, the outcome of this motion is the same whether the Court applies Nevada or California law, the latter of which is more stringent. Thus, this Motion typically cites California law, but should De Guzman raise any conflict between California and Nevada law, then Nevada law would apply to that issue.

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

CONTINUE I accept and agree to all the terms'"); *Houtchens*, 649 F. Supp. 3d at 939 ("[A]n internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." (quotations omitted)); *Adibzadeh v. Best Buy, Co.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021). So too with Nevada law. *See, e.g.*, *Spacil v. Home Away, Inc.*, 2020 WL 184985, at *4 (D. Nev. Jan. 13, 2020) (compelling arbitration when plaintiff clicked on an "'Agree & continue button'" to the terms with a "hyperlink that, if clicked, would take Plaintiff to the document containing the arbitration agreement").

De Guzman may argue that SciPlay's Terms of Service are a sign-in wrap agreement, not a clickwrap agreement. The former describes the situation when the offer "includes a hyperlink to a proposal's terms," and the company includes "language that the users will manifest their acceptance if they take *other action* (such as creating an account or clicking an entry button)," rather than clicking "an explicit 'I agree' button." *Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 568–69 (6th Cir. 2026) (applying California law). Such an argument would fail because the Terms of Service requires a user "to click an explicit ["Accept!"] button" to accept the hyperlinked terms "through a pop-up box": it does not merely have the user click some other button that he would otherwise need to click to continue with a transaction or website use. *Id.* at 568; *accord, e.g.*, *Hunter*, 2025 WL 3101978, at *3; *Houtchens*, 649 F. Supp. 3d at 939.

Regardless, SciPlay provides enough notice under that framework as well. The pop up takes up the entire screen, explains to the user that he is accepting an arbitration agreement and class-action waiver, and has a large and brightly colored "Accept!" button right below the pop-up explanation. *See Dahdah*, 166 F.4th at 569–70 (conspicuous notice includes displaying "the offer on an uncluttered page," displaying the offer close to "the button that a user must click to signal the user's acceptance," and using "a font size or color that would draw attention to the proposal"). SciPlay's notice is even more conspicuous than in *Keebaugh*; there, the Ninth Circuit compelled arbitration when the sign-in screen merely prompted a user to click a "Play" button with smaller text underneath saying that doing so would accept the terms. *See Keebaugh*, 100 F.4th at 1010, 1020–21. And just as in *Keebaugh*, SciPlay's games are phone applications that

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

allow in-app purchases and the ability to play a potentially endless mobile video game. *Id.* at 1020; Lee Decl. ¶ 3; Compl. ¶¶ 21, 24. So just as in *Keebaugh*, "the context of the transaction" also shows that SciPlay's notice was sufficiently conspicuous. *Keebaugh*, 100 F.4th at 1020–21.

Seeming to recognize that he accepted a mandatory arbitration agreement, De Guzman tries to shimmy out of it by alleging that he "did not review and was not aware" of any "terms and conditions." Compl. ¶ 38. That does not work. "A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement." *Moran v. Charter Commc'ns, Inc.*, 2020 WL 5833640, at *4 (C.D. Cal. June 11, 2020) (quotations omitted). After De Guzman received reasonable notice of the terms, his "failure to read the arbitration provision is not a sufficient defense." *Id.* Similarly put, that he "did not know there was an arbitration clause in the" Terms of Service "is not a valid defense." *Mims v. Davison Design & Dev., Inc.*, 2016 WL 10771297, at *3 (C.D. Cal. Apr. 14, 2016) (rejecting identical argument); *accord, e.g.*, *Rosales v. Vitas Healthcare Corp. of Cal.*, 2025 WL 2954975, at *3 (N.D. Cal. Sep. 16, 2025). The same is true under Nevada law: because he accepted the contract, it does not matter whether he "never saw the arbitration term" or "did not understand what arbitration was." *Augustine*, 2018 WL 3913923, at *5.

**B.     De Guzman cannot avoid arbitration by arguing that the Terms of Service are a void gambling contract.**

Based on the allegations of his complaint, SciPlay anticipates that De Guzman may try to challenge his arbitration agreement by arguing that the Terms of Service are a void gambling contract under California law. *See* Compl. ¶¶ 39–40 (alleging that "Plaintiff's contract with Defendants . . . is void" because "the sole purpose of the contract was to facilitate [] unlawful gambling activities"). That argument trips out of the gate. Because an arbitration agreement is severable from the rest of the contract, a party cannot avoid an arbitration agreement by challenging "the contract as a whole" as void. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). An argument that the contract is void as an illegal gambling contract is just the sort of challenge to a contract that *Buckeye* held was inadequate to nullify an arbitration agreement. *Id.* This type of challenge is for "an arbitrator, not a court." *Id.* at 446.

8

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

Recognizing this rule, courts across the country have held that plaintiffs cannot avoid arbitration agreements with casino-themed video game companies by alleging that the terms of service are void gambling contracts. *See, e.g.*, *Huynh v. Boom Shakalaka, Inc.*, 2026 WL 247880, at \*4–\*5 (C.D. Cal. Jan. 28, 2026) (rejecting argument by finding "*Buckeye* dispositive"); *Boyle v. Sweepsteaks Ltd.*, 2025 WL 1674480, at \*5 (C.D. Cal. May 19, 2025) (similar); *M.M. v. VGW Holdings U.S.*, 2026 WL 34452, at \*4 (D. Mass. Jan. 6, 2026); *Boatner v. SSPS LLC*, 2025 WL 3281509, at \*3 (S.D.N.Y. Nov. 25, 2025). The Court should do the same here.

### C.     The Terms of Service delegate the arbitrability question to the arbitrator.

Per the Terms of Service, the arbitrator must decide whether De Guzman's claim is arbitrable. The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," such as whether the agreement covers a particular controversy. *Henry Schein, Inc.*, 586 U.S. at 65. Delegating arbitrability questions to the arbitrator precludes courts from resolving any threshold arbitrability disputes. *Id.* One way that parties can delegate arbitrability questions to the arbitrator is by incorporating "an arbitrator's arbitration rules," including "the JAMS arbitration rules by reference." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480–81 (9th Cir. 2024).

The Terms of Service say that arbitration "will be administered solely by" JAMS under JAMS' rules. Terms of Service § 19.4. Those rules delegate to the arbitrator the "authority to determine jurisdiction and arbitrability issues as a preliminary matter," including any disputes over the arbitration agreement's formation or validity. JAMS Compr. Arb. R. § 11(b). That alone establishes that the parties agreed "to arbitrate arbitrability." *Patrick*, 93 F.4th at 481.[3]

A plain reading of the Terms of Service confirms this intention. The Terms of Service say that the parties agreed to arbitrate "***any and all*** claims (regardless of the date of accrual of such claim) ***arising out of or in connection with*** these Terms of Service or the Platform." Terms of Service § 19.1 (emphasis added). Such provisions count as a delegation clause because they

---

[3] De Guzman also agreed to the earlier Terms of Service, which incorporated the AAA's rules. *See* Lee Decl. ¶ 12; *id.*, Ex. A. Thus, the earlier Terms also had "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Patrick*, 93 F.4th at 481 (quotations omitted).

clearly and unmistakably show that the parties agreed to arbitrate issues of arbitrability. *See, e.g., Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (parties showed their "intent to have an arbitrator decide the question of arbitrability" by including an arbitration provision that said "any dispute, controversy or claim arising from or relating to this Agreement shall be subject to arbitration" (cleaned up)).

By incorporating the JAMS Rules and including a delegation clause, the parties showed a clear and unmistakable choice to delegate arbitrability issues to the arbitrator. The Court thus "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68.

Yet even if the parties had not delegated the arbitrability question, De Guzman's claims are clearly within the arbitration agreement's scope. Again, the arbitration agreement covers "***any and all*** claims (regardless of the date of accrual of such claim) ***arising out of or in connection with*** these Terms of Service or the Platform." Terms of Service § 19.1 (emphasis added). The "Platform" includes all SciPlay's "games, websites, and apps." *Id.*, intro. (capitalization changed). Every claim falls under what De Guzman agreed to arbitrate. All De Guzman's claims arise out of, or are connected with, SciPlay's games: the crux of the dispute is his (incorrect) claim that SciPlay's "mobile apps" violate "California's gambling law" and consumer-protection laws by allowing consumers to buy virtual coins. Compl. ¶¶ 1, 3–4; *see also, e.g., id.* ¶¶ 50–51, 66–68, 75, 80, 82. And even if there were "any doubts concerning the scope of arbitrable issues," those doubts "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## II. The Court should stay the case pending arbitration.

After a court finds that a case must be sent to arbitration, the FAA requires the court to stay the case "on application of one of the parties." 9 U.S.C. § 3. SciPlay requests a stay, so the FAA "requires [the] court to stay the proceeding." *Smith v. Spizzirri,* 601 U.S. 472, 476 (2024).

### CONCLUSION

The Court should grant SciPlay's motion to compel arbitration and stay the case.

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL

DATED: March 23, 2026

BARTLIT BECK LLP


/s/ Daniel C. Taylor
Daniel C. Taylor
Eric F. Dement

*Attorneys for Defendants*,
SciPlay Corporation and
SciPlay Games, LLC

11

SciPlay's Motion to Compel Arbitration; Case No. 5:26-CV-00344-EKL